## Texas National Guard Armory Board v. William McCraw, Attorney General.

No. 7492. Decided March 29, 1939.
(126 S. W., 2d Series, 627.)

*Jesse E. Moseley,* and *Clark C. Wren,* both of Austin, for relator.

Since the act authorizes the pleading of nothing more than the rents, issues and profits arising from the property of the Board and that the bonds specifically provided that they are payable from such rents, etc., and that they shall not constitute an indebtedness of the State, they are neither a debt of the State nor a pledging of lending of the State's credit. City of Aransas Pass v. Keeling, 112 Texas 339, 247 S. W. 818; Lower Colorado River Authority v. McCraw, 125 Texas 268, 83 S. W. (2d) 629; Byrd v. City of Dallas, 118 Texas 28, 6 S. W. (2d) 738; City of Houston v. Allred, 123 Texas 334, 71 S. W. (2d) 251.

*William McCraw,* Attorney General, *Grover Burton and Effie Wilson-Waldron,* Assistants Attorney General for respondent.

The act under discussion being in violation of the Constitution in that it authorizes the Board to fix and determine the rentals to be paid by the State, is void, because it is in violation of Section 1 Article II and of Section I of Article III of the Constitution. Brazos River Conservation and Rec. Dist., v. McCraw, 126 Texas 506, 91 S. W. (2d) 665; Fort Worth Cavary Club v. Sheppard, 125 Texas 339, 83 S. W. (2d) 660.

MR. JUSTICE SHARP delivered the opinion of the Court.

Texas National Guard Armory Board seeks to compel, by original mandamus proceedings, the Honorable William Mc-

Craw, Attorney General of the State of Texas, in his official capacity to approve the record concerning $4,500,000.00 of bonds executed by said Board.

The Texas National Guard Armory Board was originally created by the 44th Legislature, General Laws, page 462, chapter 184, and which was amended at the regular session of the 45th Legislature, and is now known as Article 5890b of the Revised Civil Statutes.

Throughout this opinion the Texas National Guard Armory Board will be designated as "the Board," and the last mentioned Act will be termed "the Act."

Relator and respondent have agreed to the following pertinent facts relating to this matter:

(a) The Board has applied for a Federal Government grant of $3,174,750.00, to aid it in constructing seventy-odd armories on sites located in fifty or more cities and towns in Texas, and donated to the Board; some of the armories being donated by private parties and some by municipalities, either in fee simple absolute, or by way of ninety-nine year lease.

(b) In connection with such application, the Board arranged to sell its revenue bonds, bearing interest at the rate of 4 1/4% per annum from their date until paid, falling due serially in a certain amount each year after the first year so that the whole issue will have fallen due on or before September 1, 1970; said bonds being secured by a trust indenture, naming the Fort Worth National Bank as trustee, and pledging the rents, issues, and profits of the buildings erected with the proceeds of the bonds to pay the same after first paying the expenses of maintenance, including administrative expenses of the Board. The bonds, which the Attorney General has declined to approve, were authorized by resolution of the Board.

(c) That said buildings have been designed to accommodate the units of the Texas National Guards that are located in said cities and towns.

(d) That the Board proposes to lease such structures and their equipment to the State of Texas by the execution on the part of the Board of certain leases.

(e) That the lease term to be recited in said lease or leases will coincide with the biennium appropriation of the Legislature, so that each lease term will expire on the same day as the said biennium appropriation expires.

(f) That, with respect to each such lease, the rental therein provided to be paid by the State of Texas will be in compliance with Subdivision (i) of Section 2 of the Act; that is to

say, "Sufficient to provide for the operation and maintenance of the property so leased, to pay the interest on the bonds, debentures, or other evidences of indebtedness issued for the purpose of acquiring, constructing, or equipping such property, to provide for the retirement of such bonds, debentures, or other evidence of indebtedness, and the payment of the expenses incident to the issuance thereof, as well as the necessary and proper administrative expenses of the Board"; all to be determined by the Board and stated in the lease or leases in a proper and accurate manner.

(g) That the Adjutant General of the State of Texas is expected to execute each such lease or leases, and any renewal thereof, in behalf of the State of Texas.

(h) That the rents, revenues, and profits arising from said property are to be pledged by the Board, in the manner and form set out in the trust indenture.

(i) That the said buildings are to be constructed on sites of land deemed adequate by the Board for the purpose, which sites either have already been, or will be prior to the beginning of construction thereon, donated to or otherwise acquired by the Board.

(j) That a considerable number of such donations will be made by individuals or groups of individuals having no public status, but some of such donations either have been or will be made to the Board by the municipal corporations within whose territorial confines, or near whose territorial boundaries, such sites are located; the conveyance of such sites to transfer to the Board a fee simple title in some instances, and in other instances a lease-hold for a term of ninety-nine years; which shall require no payment on the part of the Board of rental or taxes,—the expressed consideration being the construction of buildings.

The Board has contracted to sell said bonds, but the law provides that said bonds may not be sold "until same have been approved by the Attorney General of the State of Texas and registered with the Comptroller of Public Accounts," The Attorney General has refused to approve said bonds, based upon the following objections:

"FIRST. The following sub-paragraphs of Section II of said Act are void for unconstitutionality in that (i) authorizes the creation of a debt on behalf of the State in violation of Section 49, Article III of the Constitution of Texas, and (g) (h) and (i) taken together constitute the giving or lending and a pledge of the credit of the State in violation of Section 50

of said Article; and (i) in so far as it authorizes the Board to fix and determine the rentals to be paid by the State is a delegation of legislative authority in violation of Section I of Article II and of Section I of Article III of said Constitution.

"SECOND. That, in view of the provisions of Section 52 of Article III of said Constitution, the Board cannot validly acquire sites for armories by way of donations thereof from incorporated cities and towns, from which it follows that the pledge of the revenues from the buildings to be erected on such sites would be without effect and would not constitute the security contemplated by the Act which authorizes the issuance of said bonds.

"THIRD. That the Board is without authority to acquire or hold sites for armory buildings or to pledge the revenues from buildings erected thereon if the title in said Board is by way of a long term lease and not in fee simple absolute.

"FOURTH. That, whether or not the third proposition be true, the Board is without authority to lease to the State of Texas any buildings it may erect on the sites held by the Board on long term lease since to do so would be a subleasing not contemplated or authorized in the said Act.

"FIFTH. That the leases of the Board to the State of Texas, which the said Act contemplates to be made, can not be validly executed by or in behalf of the State of Texas from which it follows that any pledge, such as is contained in the said indenture, of the rents to be derived from leases to the State would be void and without effect."

Before considering the objections raised by the Attorney General to the validity of this Act, we will first consider the questions as to whether certain parts of this Act violate Sections 30 and 30a of Article 16 of the Constitution.

Section 1 of this Act provides that the Texas National Guard Armory Board shall be composed of three members. The Act also provides that: "The persons acting as the members of the existing Texas National Guard Armory Board shall constitute the members of the Board under the provisions of this Act. The members of the Board shall serve without compensation until their resignation in writing shall be accepted by the Governor of Texas, or until death or removal for malfeasance. Any vacancy shall be filled by the senior active officer of the Texas National Guard, after excluding such officers as shall then be members of the Board, whose name shall be certified to the Secretary of State by the Adjutant General of the State of Texas not later than fifteen days after such vacancy shall have occurred. Any such officer ap-

pointed to fill a vacancy shall qualify for office by taking and filing the constitutional oath of office with the Secretary of State."

■ In Section 30 of the Constitution the term of State officers, except members of the Railroad Commission and officers whose terms are otherwise fixed by the Constitution, shall not exceed two years. Section 30a stipulates that the Legislature may provide by law that the members of such boards as have been, or hereafter may be, established by law may hold their respective offices for a term of six years.

It is contended that since the officers will hold office until death, or until they resign or are removed for malfeasance, such provisions of the Act violates Sections 30 and 30a, supra.

It is well to keep in mind that we are dealing with statutes and provisions of the Constitution relating to military matters, and the power of the State to create an army and provide for its maintenance. The results of being unprepared for the World War are still fresh in the memories of our people. In order to avoid a repetition of such results, many laws relating to military matters have been passed by the Congress of the United States and by the legislatures of the various states. This Act is part of the program adopted by the Legislature of Texas relating to the organization and maintenance of the Texas National Guard.

Section 8 of Article 1 of the Constitution of the United States furnishes the power to Congress to raise armies. It reads as follows: "The Congress shall have power * * * To provide for calling forth the militia to execute the laws of the Union, suppress insurrections and repel invasions; To provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the States, respectively, the appointment of the officers, and the authority of training the militia according to the discipline prescribed by Congress."

Under this part of the Federal Constitution Congress has passed Acts under which the armies of this nation are raised and equipped. Among those laws enacted for that purpose was the National Guard Act of January 21, 1903, c. 196, 32 Stat. 775; National Defense Act of June 3, 1916, c. 134, 39 Stat. 211; and the Selective Draft Law of May 18, 1917, c. 15, 40 Stat. 76.

The State of Texas in its Constitution has given the Legislature broad powers to raise an army. Section 46 of Article

16 of our Constitution reads: *"The Legislature shall provide by law for organizing and disciplining the militia of the State, in such manner as they shall deem expedient, not incompatible with the Constitution and Laws of the United States."* (Italics ours.)

Section 46, supra, has been in the Constitution of Texas since 1845. That this State retains a right, concurrent with the United States Government, to organize and train its militia, is recognized in Section 8 of Article 1 of the Constitution of the United States and in this provision of our Constitution. This right was expressed in the early case of Houston v. Moore, 5 Wheat., 1, 5 L. Ed., p. 19. The power of Congress and the States to legislate on military matters was discussed and the opinion of that court was expressed as follows: "Congress has power to provide for organizing, arming, and disciplining them; and this power being unlimited, except in the two particulars of officering and training them, according to the discipline to be prescribed by Congress, it may be exercised to any extent that may be deemed necessary by Congress. But as state militia, the power of the state governments to legislate on the same subject, having existed prior to the formation of the Constitution, and not having been prohibited by that instrument, it remains with the states, subordinate nevertheless to the paramount law of the general government operating upon the same subject."

Pursuant to such constitutional command, the Legislature has made detailed provision for the organization, equipment, and functioning of the State militia. See Title 94, chaps. 1, 2, 3, and 4, Article 5765 et seq., Vernon's Annotated Revised Civil Statutes. The active militia is by statute now called the Texas National Guard. Article 5765, Revised Civil Statutes. This Act, now Article 5890b, Revised Civil Statutes, was enacted at the Regular Session of the 45th Legislature, chap. 366.

It would be difficult for the mind to conceive how an army could be raised, equipped, and disciplined, as commanded by Section 46 of Article 16 of the Constitution, without armories to house the army and its equipment. The power to provide for the army is left to the wisdom of the Legislature, subject only to the limitation that such laws as shall be passed by the Legislature shall not be *"incompatible with the Constitution and laws of the United States."* The Legislature has seen fit to enact this law for the purpose of procuring sites and erecting armories, and has furnished the method for financing the plan. The wisdom or the expediency of this law is left exclusive-

ly to the Legislature to determine, and courts are concerned only with its validity.

That the Texas National Guard plays an important part in the military program of this country can hardly be questioned. It is not only a potential part of the United States Army in time of peace, but it is subject to be called into the service of both the State and the National governments. See Article 5830 et seq. of the Revised Civil Statutes. Under certain conditions the mayor of a city may call out the National Guard located in or adjacent to his city. (Article 5831.) The United States Government is not only spending large sums of money to equip and maintain its military forces, but it is also liberally co-operating with the various States to maintain National Guard units in those States. Texas is merely keeping step with the other States in the organization and maintenance of its National Guard, the expenses of which are paid by both the State and the Federal governments. No argument need be advanced to show the necessity of equipping and maintaining a National Guard as a means of defense, and such duty is a matter of vital concern to the National and the State governments, as well as to the cities.

We think Sections 30 and 30a, supra, relate to civil offices, and not to military offices. We also think it clear that positions on the Board provided for in this Act are military offices, and not civil offices. The present National Defense Act fixes no term for the commission of an officer in the National Guard, but contains specific provisions as to how commissions of officers in the National Guard may be vacated. See Act June 3, 1916, (39 U. S. St. at L., 197, c. 134 secs. 57-111.)

A commissioned officer in the National Guard of Texas is considered as holding a military, and not a civil office. Article 5800 of the Revised Civil Statutes reads: "All officers of the National Guard of Texas shall be appointed and commissioned by the Governor, and shall hold their positions until they have reached the age of sixty-four years, unless sooner retired by reason of resignations, disability or for cause to be determined by a court martial or an efficiency board legally convened for that purpose." See also Section 40 of Article 16 of the Constitution.

The case of Ex parte Archie Dailey, 246 S. W. 9, 26 A. L. R. 138, involved the question as to whether an officer in the National Guard held a civil or a military office. Judge Porter was holding the office of district judge and at the same time was a captain in the National Guard. It was contended that

he held two offices, in violation of the Constitution. After reviewing the various articles of the Constitution of the United States, the various articles of the Constitution of this State, and the statutes, relating to the status of an officer in the National Guard, the Court of Criminal Appeals held: "Where the term 'civil officer' is employed, it is shown it is meant to exclude an officer of the militia. We are of opinion that a reading of the entire title and the various chapters of the Revised Civil Statutes relative to the National Guard makes it clear that an officer of that body is a 'military' and not a 'civil officer,' * * *"

In the brief filed by the Honorable Wm. McCraw, Attorney General, the validity of this Act on this point was not questioned. The Honorable Gerald C. Mann is now Attorney General, and has filed a brief on this question. On this point the provisions of the Federal and State constitutions, and the decisions construing such constitutional provisions and statutes, are cited and discussed. After a discussion of the decisions relating to this matter, the views of that department are expressed as follows:

"Article XVI, Section 30a, of the Constitution deals with civil officers and boards, and Article XVI, Section 46, of the Constitution deals with distinctly military matters. This seems to have been recognized without question in commissioning officers of the National Guard, and we conclude that the statute creating the Armory Board deals distinctly with the military and is not limited by the provisions of the Constitution applying to the civil officers of the government.

"The Constitution seems to give to the Legislature unlimited power to pass laws for the organization and disciplining of the Militia in so far as the said Constitution is concerned, and not otherwise limited, except by the requirement that the laws passed must not be 'incompatible with the constitutional laws of the United States.'

"It is, therefore, submitted that the tenure of office as prescribed in the Armory Board Act, is not in conflict with the provisions of our State Constitution."

The clear purpose of this Act is to give stability to the military arm of the State. It provides that the persons acting as members of the existing Texas National Guard Armory Board shall compose the members of the Board under this Act. This Act provides that those who constitute this Board shall be the three ranking members of the Texas National Guard, which insures experienced men on the Board to guide

and direct the affairs of the Texas National Guard. The members of the Board serve without pay, and it is to them a duty of trust and honor. The dominant object of this part of the Act is to have continuity of service on the Board of men of military training, and who have been selected for their experience and merit, in order that the efficiency of the Board may not. be impaired. We hold that the Board provided for therein is not such a Board as contemplated by Sections 30 and 30a, supra, and we are of the opinion that this Act does not violate the provisions of such sections of the Constitution.

The first objection urged by the Attorney General suggests the invalidity of the Act because it violates Sections 49 and 50 of Article 3 of our Constitution. Those provisions of the Constitution read as follows:

"Sec. 49. No debt shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debt; * * *

"Sec. 50. The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever."

The Act under consideration (now Article 5890b, supra,) embraces the following described dominant purposes:

1. It prescribes that the Texas National Guard Armory Board shall consist of three members, prescribes their terms of office, and prescribes that said Board shall be a body politic and corporate.

2. It prescribes that the Board shall have charge of the acquisition, construction, rental, control, maintenance, and operation of all Texas National Guard armories, and other property and equipment necessary or useful in connection therewith, and that said Board shall possess all powers necessary and convenient for the accomplishment of such duty,— including, but without being limited thereto, the following express powers:

(a) To sue and be sued.

(b) To enter into contracts in connection with any matter within the objects, purposes, or duties of the Board.

(c) To acquire property, whether real, personal, or mixed,

by gift or by purchase; and to convey such property, and to pledge the rents, issues, and profits thereof.

(e) To borrow money, and to issue and sell bonds, debentures, and other evidences of indebtedness, for the purpose of acquiring building sites and buildings, and for the purpose of constructing and equipping buildings; and such bonds, debentures, or other evidences of indebtedness to be payable solely from the rents, issues, and profits of all the property so acquired or constructed by the Board.

(f) To execute and deliver leases, leasing to the State of Texas, through the Adjutant General, for such lawful terms as may be determined by the Board, any building or buildings, and the equipment therein, and the site or sites therefor, to be used for armory and other proper purposes; and to renew such leases from time to time.

Section 2 (h) of the Act authorizes the Board "to borrow money, and to issue and sell bonds, debentures and other evidences of indebtedness for the purpose of acquiring building sites and buildings, and for the purpose of constructing and equipping buildings, such bonds, debentures or other evidences of indebtedness to be fully negotiable and to be payable solely from the rents, issues and profits of all of the property so acquired or constructed by the Board * * *. Such bonds, debentures or other evidences of indebtedness shall be secured by pledge of all the rents, issues and profits of all of the property owned by the Board, and for that purpose the Board shall have power from time to time to execute and deliver trust deeds and trust agreements whereunder any bank or trust company authorized by the laws of the State or of the United States of America to accept and execute trusts in the State may be named and act as Trustee."

The indenture, shown in the resolution and in the form of the bond, contains the following provisions:

"The principal of and interest on this bond and all other bonds issued under the said Indenture are payable solely from the rents, issues and profits to be derived by the Board from the operation and/or leasing of the said armory buildings, after the payment of the cost of operating, maintaining, insuring and repairing the same and the necessary and proper administrative expenses of the Board, * * *

"This bond shall not constitute nor be deemed to be or create an indebtedness of the State of Texas of any kind or nature, nor is the credit of the State of Texas pledged for the payment of this bond or the interest hereon, or any part thereof."

■ The Constitution is the fundamental law, which contains the principles upon which the government of the State rests, regulating the three branches of government, and directing how each department shall exercise its powers. The Constitution is to be construed as a whole, so as to give effect to every provision, and, if possible, to harmonize them. G. H. & S. A. Ry. Co. v. State, 77 Texas 367, 12 S. W. 988, 13 S. W. 619; Jones v. Williams, 121 Texas 94, 45 S. W. (2d) 130, 79 A. L. R. 983; Collingsworth County v. Allred, 120 Texas 473, 40 S. W. (2d) 13; Travelers' Ins. Co. v. Marshall, 124 Texas 45, 76 S. W. (2d) 1007, 96 A. L. R. 802; 9 Tex. Jur., sec. 24, pp. 434, 435.

In Section 46 of Article 16 of the Constitution the Legislature is expressly commanded to provide by law, *"in such manner as they may deem expedient,"* for the organization of the militia of this State. It would be idle to say that the Legislature could comply with the mandate expressed in such provision without means to finance the *"organization and disciplining the militia of the State."* It has long been the policy of the courts of this State to construe liberally constitutional provisions directing the action of legislatures, so as to carry out the purposes for which such provisions of the Constitution were adopted. See 9 Tex. Jur., sec. 22, p. 432.

■ This Court has repeatedly held that no act of the Legislature will be declared unconstitutional unless some provision of the Constitution can be cited which clearly shows the invalidity of such act. Brown v. City of Galveston, 97 Texas 1, 75 S. W. 488; 9 Tex. Jur., sec. 59, pp. 477, 478, and cases cited in footnotes. The burden is on him who attacks a law for unconstitutionality, and courts need not exert their ingenuity to find reasons for holding the law invalid. As was said by the Supreme Court of the United States in the case of Middleton v. Texas Power & Light Co., 249 U. S. 152 (p. 157), 39 S. Ct. 227, 63 L. Ed. 527: "There is a strong presumption that a legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds."

If doubt should be raised as to the validity of a statute, such statute should be held valid unless it clearly violates some provision of the Constitution. This Court, speaking through Mr. Justice Brown, in the case of Brown v. City of Galveston, 97 Texas 1, 75 S. W. 488, said: "If there be doubt as to the validity of the law it is due to the co-ordinate branch

of the government that its action should be upheld and its decision accepted by the judicial department. In his work on Constitutional Limitations, page 218, Mr. Cooley says: 'The question whether a law be void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligation which that station imposes; but it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.' "

Mr. Justice Williams, speaking for this Court in Lindsey v. State, 96 Texas 586, pp. 588, 589, 74 S. W. 751, said: "We must take and apply the plain language of the Constitution as we find it and can not add to it so as to restrict the powers of the Legislature further than such language restricts it, in order to prevent a fancied mischief. 'We are not to import difficulties into a Constitution by a consideration of extrinsic facts, when none appear upon its face.' Cooley, Const. Lim., 78."

This Court construed the law, Chapter 7, Acts of the 4th Called Session of the 43d Legislature, page 19 et seq., under which the Lower Colorado River Authority was created. In that Act the Legislature authorized the issuance of bonds, and provided that such bonds should be payable solely out of the revenues to be derived by the district in respect of its property, and that the credit of the State should never be pledged, nor should any tax be levied by the district for the payment of such bonds. The Attorney General refused to approve the bond issue, and original mandamus proceedings were filed in this Court to compel him to approve such bonds. Among the reason alleged for refusing to approve the bond issue was the following: "Said sub-section (c) (of Section 59 of Article 16 of the Constitution) further provides that 'the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted'."

In answer to such contention, this Court, speaking through Mr. Justice Critz, in the case of Lower Colorado River Authority v. McCraw, 125 Texas 268, 83 S. W. (2d) 629, said: "Bonds

payable only out of revenues, and that can never become a charge otherwise against the district, do not constitute an indebtedness within the meaning of Subsection (c), supra. City of Dayton v. Allred (Commission of Appeals opinion adopted), 123 Texas 60, 68 S. W. (2d) 172, and authorities there cited; City of Houston v. Allred (Commission of Appeals opinion adopted), 123 Texas 334, 71 S. W. (2d) 251."

In the case of Brazos River Conservation and Reclamation District v. McCraw, 126 Texas 506, 91 S. W. (2d) 665, it was contended that the proposed issue of bonds would violate Sections 49 and 50 of Article 3 of the Constitution. Mr. Chief Justice Cureton, speaking for this Court, in that case said: "The objection that the act is an attempt to authorize the board of the district to create a debt in behalf of the State, or lend the credit of the State in violation of the inhibitory provisions of Sections 49 and 50 of Article 3 of the Constitution, is without merit. No debt on the part of the State is to be created, nor is the State's credit loaned for that purpose.

■ Finally, we hold that the bonds provided for by the Act under consideration would create no debt against the State of Texas nor is the credit of the State pledged for the payment of such bonds, or interest thereon, or any part thereof. Such bonds would be payable solely from the rents, issues, and profits to be derived from the operation or leasing of the armory buildings; unless the Legislature, in the exercise of its power and discretion, should see fit, when making its biennium appropriations, to include therein a sufficient sum of money to pay such bonds, or any part thereof.

The Act is also assailed on the ground that the Legislature has exceeded its constitutional authority by undertaking to delegate to the Board the power to fix the rentals to be paid by the State, and that such effort on the part of the Legislature to delegate such power is in violation of Section 1 of Article 2 and Section 1 of Article 3, of the Constitution.

Section 1 of Article 2 provides that the powers of the government of the State shall be divided into three distinct departments, the legislative, the executive, and the judicial; and, except as expressly permitted by the Constitution, one department shall not entrench upon the power and rights of the other departments.

Section 1 of Article 3 reads: "The legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas'."

Modern conditions have brought about many new problems which invoke governmental aid and regulation. That it is impossible for the Legislature or the Congress to express in detail every thing or act required to administer such laws efficiently and practically is now undisputed. The constant trend of modern legislation is to delegate certain power and discretion to boards, tribunals, and representatives, to carry out certain purposes for which such legislation is enacted. 12 C. J., Sec. 323, p. 841.

■ The general rule prevails that, unless there is express authority given in the Constitution, the power of general legislation may not be delegated by the Legislature. See 9 Texas Jur., Sec. 68, p. 493. However, there are many powers that the Legislature may delegate to other bodies. In many instances, where the Legislature cannot itself practically or efficiently perform the functions required, there can be no doubt of its authority to designate some tribunal to perform the duties required to carry out the purposes of such legislation. In this State the Legislature has created the Railroad Commission, the Live Stock Commision, the Highway Commission, and many other agencies; and the trend of modern decisions is to uphold such laws. Trimmier v. Carlton et al., 116 Texas 572, 296 S. W. 1070; O'Brien et al. v. Ammerman et al., 112 Texas 254, 247 S. W. 270; 9 Texas Jur., Sec. 70, pp. 496, 497, and cases cited in the footnotes; Selective Draft Law Cases, 245 U. S. 366, 62 L. Ed. 349; 11 Am. Jur., Secs. 240, 241, 242, and 243, p. 955 et seq., and cases cited in footnotes.

It was urged that the Selective Draft Law was unconstitutional because it violated Section 8 of Article 1 of the Federal Constitution, above quoted. It was contended there that a citizen could not be drafted into military service and sent out of the country, and that the Act delegated legislative authority and infringed on the provisions of the Constitution concerning judicial powers. Many other objections were raised as to the validity of the Act. Mr. Chief Justice White, speaking for the Supreme Court of the United States, in the celebrated Selective Draft Law cases, supra, brushed aside the objections made, and, after describing the power of the nation to raise an army, said: "Brevity prevents doing more than to call attention to the fact that the organized body of militia within the States as trained by the States under the direction of Congress became known as the National Guard (Act of January 21, 1903, c. 196, 32 Stat. 775; National Defense Act of June 3, 1916, c. 134, 39 Stat. 211). And to make further preparation from among the great body of the citizens, an additional number to

be determined by the President was directed to be organized and trained by the States as the National Guard Reserve. (National Defense Act,. supra.)

"Thus sanctioned as is the Act before us by the text of the Constitution, and by its significance as read in the light of the fundamental principles with which the subject is concerned, by the power recognized and carried into effect in many civilized countries, by the authority and practice of the colonies before the Revolution, of the States under the Confederation and of the Government since the formation of the Constitution, the want of merit in the contentions that the Act in the particulars which we have been previously called upon to consider was beyond the constitutional power of Congress, is manifest."

In summing up his conclusions in that case, he further said: "It remains only to consider contentions which, while not disputing power, challenge the Act because of the repugnancy to the Constitution supposed to result from some of its provisions. First, we are of opinion that the contention that the Act is void as a delegation of federal power to state officials because of some of its administrative features, is too wanting in merit to require further notice. Second, we think that the contention that the statute is void because vesting administrative officers with legislative discretion has been so completely adversely settled as to require reference only to some of the decided cases. Field v. Clark, 143 U. S. 649; Buttfield v. Stranahan, 192 U. S. 470; Intermountain Rate Cases, 234 U. S. 476; First National Bank v. Union.Trust Co., 244 U. S. 416. A like conclusion also adversely disposes of a similar claim concerning the conferring of judicial power. Buttfield v. Stranahan, 192 U. S. 470, 497; West v. Hitchcock, 205 U. S. 80; Oceanic Steam Navigation Co. v. Stranhan, 214 U. S. 320, 338-340.; Zakonaite v. Wolf, 226 U. S. 272, 275."

The Legislature has found that boards are convenient and practicable in carrying out the purposes of the Legislature, and many Acts could be cited. For instance, by the Acts of 1934, 43 Leg., S. C. S., p. 14, chap. 5, as amended Acts of 1935, 44 Leg., S. C. S., p. 1752, chap. 459, now Arts. 2603c and 2603d, Vernon's Annotated Texas Civil Statutes, the Legislature delegated certain powers to the Board of Regents of the University of Texas and its branches, and to the boards of directors of many other educational institutions in this State, to obtain funds from the Federal Government. Said boards were given broad powers to make contracts and issue bonds.

Subject to certain restrictions, the Act, among many other things, provides:

"\* \* \* each of said boards is given complete discretion in fixing the form, conditions, and details of such bonds or notes. Any bonds or notes issued hereunder shall not be an indebtedness of the State of Texas, but shall be payable solely from the revenues to be derived from the operation of said buildings.
\* \* \* \* \* \* \*

"Each of said boards is hereby authorized and empowered to enter into contracts with municipalities or school districts for the joint construction of museum, library buildings, or such other buildings as may be deemed necessary."

See also Articles 2589b and 2603a of Vernon's Annotated Texas Civil Statutes.

The case of Fort Worth Cavalry Club v. Sheppard, 125 Texas 339, 83 S. W. (2d) 660, involved a lease, under which the State, as lessee, acting through the Adjutant General, had undertaken to acquire and pay rental for certain real property to be used as an armory. That case involved the construction of Article 5787 et seq., of the Revised Civil Statutes of Texas, as to the power of the Adjutant General to execute a contract. The law under which that case arose did not contain any express language authorizing the Adjutant General to rent or lease armories for the National Guard for any period of time. He executed a contract for a term of five years for certain real property located in this State, and agreed to pay so much per month therefor. The contract contained the following provision: "The State of Texas guarantees the payment of the rent for the above described property in accordance with this lease contract." The question was raised there, as here, that the Adjutant General did not have the authority to execute a contract on behalf of the State. In an opinion of this Court, written by Mr. Justice Critz, it was said: "When we come to construe such statutes, together with the above-quoted appropriation act, it is reasonably clear to us that the Adjutant General had the implied power, within the reasonable limitations of such appropriation, to make contracts for the period and purposes covered thereby, and no further." (83 S. W. (2d) 665.)

We will consider the third, fourth, and fifth objections together.

█ The State has the right to contract, unless restricted or limited by the Constitution. The subjects of contract, the length

of term for which a contract may be made, and the general policy relating to contracts, are clearly within the power of the Legislature. The Constitution does not provide for the length of term for which a contract may be made by the State. The only provisions of the Constitution which might affect the term of a contract are those which prohibit the creation of any debt by or on behalf of the State (Section 49 of Article 3 of the Constitution) and that no appropriation of money may be made for a longer term than two years (Section 6 of Article 8 of the Constitution), and that monopolies shall never be allowed (Section 26 of Article 1 of the Constitution).

The contract involved here was made by the Board by virtue of the provisions of this Act. It is specifically agreed that the lease term will coincide with the biennium appropriation, so that each lease term will expire on the same day that the biennium appropriation expires.

The case of Charles Scribner's Sons v. Marrs, 114 Texas 11, 262 S. W. 722, involved a contract executed by the State Textbook Commission for a period of time not to exceed six years, as provided for in the Act authorizing the execution of said contract. It was contended that the contract executed under such Act violated the Constitution. This Court, after discussing the Act in the light of the Constitution, and holding that the State Textbook Commission could execute such a contract, held:

"Obligations that run concurrent with revenues are not debts within the contemplation of the Constitution."

In this Act it is provided that the Texas National Guard Armory Board is constituted a body politic and corporate, and prescribes how it shall organize and function. It in detail describes the duties and powers of such Board, and among the powers so granted is the following: "(i) To execute and deliver leases demising and leasing to the State of Texas through the Adjutant General for such lawful term as may be determined by the Board, any building or buildings and the equipment therein and the site or sites therefor, to be used for armory and other proper purposes, and to renew such leases from time to time; provided, however, that if at any time the State of Texas shall fail or refuse to pay the rental reserved in any such lease, or shall fail or refuse to lease any such building and site, or to renew any existing lease thereon at the rental provided to be paid, then the Board shall have the power to rent such building and equipment and the site

therefor to any person or entity and upon such terms as the Board may determine."

This Act places the burden on the Board to do whatever is necessary to carry out its objects and purposes, and such contracts or leases are to be made "through the Adjutant General for such lawful term as may be determined by the Board." The Board is authorized to acquire sites for armory purposes, by gift or purchase, and to pledge the rents or profits thereof, and to execute bonds, debentures, and other evidences of indebtedness therefor, payable solely from the rents, issues, and profits thereof; and it is expressly agreed that said bonds or other evidences of indebtedness shall not constitute nor be deemed a debt of the State of Texas, nor is the credit of the State of Texas pledged for the payment thereof.

■ The fourth objection is that the Board is without authority to lease to the State any buildings it may erect on the sites held by the Board, since to do so would be subleasing said buildings, which is not authorized by this Act.

The general rule prevails in this State that one who rents property from another shall not sublease same without the consent of the owner. Article 5237, R. C. S. A copy of the proposed form of lease is attached to this record, and it contains the following clause: "The lessee hereby covenants that it will not assign this lease or any interest hereunder and will not sublet the demised premises or any part thereof without the written consent of the lessor first had and obtained." Unquestionably a lessor can consent for a lessee to sublease property. Therefore the fourth objection is overruled.

In our opinion, this Act does not violate any of the provisions of the Constitution, and we find adequate grounds on which to base its validity.

Since the second objection urged by respondent does not relate to the validity of the Act in controversy, we will consider it last.

■ The State has a vital interest in its cities. In its governmental capacity a city is a political subdivision of the State, and in many instances is considered as an agent of the State; and the State may use such agent in the discharge of its duties. Yett v. Cook, 115 Texas 205, 281 S. W. 837; City of Uvalde v. Uvalde Elec. Co., 250 S. W. 140 (Com. Appls.); Trenton v. New Jersey, 262 U. S. 162, 43 S. Ct. 534, 67 L. Ed. 937, 29 A. L. R. 1471; 43 C. J., Sec. 5, p. 69, and Sec. 179, p. 182, and cases cited in footnotes; San Felipe de Austin Corpora-

tion v. State, 111 Texas 108, 229 S. W. 845; City of Aransas Pass v. Keeling, 112 Texas 339, 247 S. W. 818; 43 C. J., Sec. 5, p. 70.

■ This record discloses that sites for armories either have been or will be made by municipal corporations. It is contended that, in view of Section 52 of Article 3 of the Constitution, the Board cannot validly acquire sites for armories by way of donations from incorporated cities, and that lease contracts or pledge of revenues from the buildings to be erected on such sites would not constitute a valid security for the payment of the bonds.

This Act does not undertake to authorize municipal corporations to donate sites for armories; nor has the Legislature enacted any law which undertakes to confer on such cities that power. Since the Legislature has not by law authorized municipal corporations to donate sites for armories, it becomes unnecessary to decide the power of the Legislature to authorize municipal corporations to lend their aid to the Board by donating sites for armories under the provisions of Section 52 of Article 3 of the Constitution.

The question before us is whether the Attorney General should be compelled by mandamus to approve bonds based on lease contracts on sites donated to the Board by municipal corporations.

■■. A writ of mandamus will not issue to compel the Attorney General to perform an official act unless relator shows a clear legal right to such writ. Denison v. Sheppard et al., 122 Texas 445, 60 S. W. (2d) 1031; Kemp v. Wilkerson, 113 Texas 491, 259 S. W. 912; 28 Texas Jur., p. 533, Sec. 11. If the right to such relief is doubtful, the writ of mandamus will not issue. Bledsoe v. International R. R. Co., 40 Texas 537; 28 Texas Jur., pp. 533, 534; Sec. 11, and cases cited in footnotes.

It is contended by relator that the State may authorize a municipal corporation as its agent to donate a site for an armory; citing, among others, the cases of City of Aransas Pass v. Keeling, supra, and Brazos River Conservation and Reclamation District v. McCraw, supra.

The case of City of Aransas Pass v. Keeling, supra, is not in point. That case involved an Act of the Legislature authorizing the City of Aransas Pass to construct sea walls in order to protect the city from calamitous overflows. That Act was upheld by virtue of Section 8 of Article 11 of the Constitution, wherein the Legislature is authorized to aid cities situated on the Gulf Coast in the construction of sea walls

and breakwaters. The Act was also sustained on the language used in Section 51 of Article 3 of the Constitution, which expressly granted the Legislature the power to extend aid to a city "in case of public calamity."

Likewise, in the case of Brazos River Conservation and Reclamation District v. McCraw, supra, the Act of the Legislature authorizing such district to issue bonds was sustained by reason of Section 59 of Article 16 and Section 51 of Article 3, of the Constitution.

As it appears that the security of the bonds provided for in the Act under consideration would rest in part on lease contracts for armory sites which have been or will be donated by municipal corporations, the Attorney General was clearly within his right in refusing to approve such bonds. For this reason the writ of mandamus will be refused.

ASSOCIATE JUSTICE CRITZ concurring in part and in part dissenting.

I am in full accord with the judgment entered in this case. I am also in accord with the grounds set forth in the opinion of the Court on which such judgment is entered. If I properly interpret the opinion of the majority, its effect is to hold that if these bonds are again presented to the Attorney General for approval, with the record in conformity with the opinion, it will be his duty to approve them. I am not in accord with this part of the opinion. The following expresses my views:

Subdivision (h) of Section 2 of the Act under consideration here creates a board, whose duty it is to carry out and effectuate its provisions and purposes. It is provided that the persons acting as members of the existing Texas National Guard Armory Board shall constitute the Board under this Act. This means that the persons who constituted the Texas National Guard Armory Board at the time this Act became effective were constituted the Board thereunder. The Board existing at such time consisted of three members, being the three active senior officers of the Texas National Guard. Acts 1935, 44th Leg. p. 462, chap. 184. It follows that the Board created by this Act consisted in the beginning of three members, who were the three senior active officers of the Texas National Guard. The subdivision of this Act here under consideration then proceeds to provide: "Members of the Board shall serve * * * until their resignation in writing shall be accepted by the Governor of Texas, or until death, or removal for malfeasance." Thus, under the express terms of the Act, a Board

is created whose members hold their respective offices for life, unless they resign, die, or are removed for malfeasance. To my mind, such a provision is in absolute contradiction and contravention of Sections 30 and 30a of Article XVI of our State Constitution.

Section 30, supra, limits the terms of all officers in this State, except members of the Railroad Commission and officers whose terms are otherwise fixed by the Constitution, to not exceeding two years. Section 30a, supra, so far as applicable here, stipulates that the Legislature may provide by law that the members of such boards as have been, or may hereafter be, established by law, shall hold their respective offices for a term of six years. Officers who hold office for life, unless they die, resign, or are removed for malfeasance, are not only unknown to our State Government, but are absolutely prohibited by our Constitution. It is my opinion that the Board created by this Act is unconstitutional and void, because in violation of Sections 30 and 30a of Article XVI of our State Constitution. The Act is utterly unworkable without a Board. It is therefore my opinion that the whole Act must fall, because of the unconstitutionality of the Board.

If I properly interpret the majority opinion, it holds that Sections 30 and 30a of Article XVI of our State Constitution are not violated in this instance in the terms of office prescribed for the offices filled by the members of this Board, because such offices are military and not civil offices, and because the persons who fill such offices are military officers, and not civil officers. I cannot agree to such a holding. The very Act which created this Board requires that its members shall take the constitutional oath of office prescribed for civil officers of our State Government. Such Act also provides that such Board shall be a body politic and corporate. It is also provided that such Board can sue and be sued. The duties of the members of this Board are, for all practical purposes, purely civil in their nature. The members of this Board must be members of the National Guard when they are first inducted into office; but thereafter they can sever all connection with the National Guard, and still serve as members of the Board for life. As already shown, the duties of this Board are purely civil. Not one lawful act or duty is authorized or required by this law of this Board that could not be authorized and required of the Board of Control, or any other civil State agency. In this connection, not one act or duty is required or authorized that could not be required or authorized of a board composed purely of members taken from the ordinary walks of life. It is of tre-

mendous significance that this law makes this Board a body politic, and requires its members to take the constitutional oath of office. The Legislature had no power to require the members of this Board to take the oath of office prescribed by our fundamental law for civil officers, unless it regarded and had constituted them such officers; and to my mind the fact that such oath was required, furnishes conclusive proof that the Legislature intended the members of this Board to be civil officers.

To my mind, this Act, in so far as it authorizes rental or lease contracts with the State, and long-term bonds of the Board based thereon, presents a legal impossibility, and a legal paradox. According to the plan, the Board is constituted a State agency, and its members State officers. The Board acquires property in its name as such. The Board rents the property acquired by it to the State, by making rental contracts with another State agency, the Adjutant General. On such lease contracts the Board issues bonds, secured by the rents to be paid by the State. When the bonds are all paid, the properties held by the Board become, as a matter of law, the properties of the State. Under such a law, while the Board holds the legal title, such title holding is a pure fiction. The real title is in the State from the beginning. Thus we have one agency of the State taking the State's own property and leasing it to the State, for a stipulated rental to be paid by the State, and bonds issued on such rental. I cannot agree that such a scheme is possible. One cannot rent his own property to himself. If this scheme is good in law the State can issue bonds in any amount and for any term of years by the simple expedient of purchasing or leasing property in the name of some State agency, then have such State agency to rent or lease the property to the State by making rent or lease contracts with some other agency of the State, and then issue interest bearing bonds based on the rentals to be paid by the State. To my mind, such a law is a plain contradiction, and an evident evasion. I protest any holding that lends judicial approval to such an impossible scheme.

If I properly interpret the opinion of the majority, it holds that this law does not attempt to authorize lease contracts with the State, except for two years at a time. I agree with this holding. The record, however, makes some reference to long-term lease contracts. I do not know what is meant by this. I simply stand on the statement that I am of the opinion that, if this law is otherwise valid, lease contracts for two

years at a time can be made. Of course, I do not believe that the law is otherwise valid,—for reasons I have stated.

The opinion of the majority condemns these bonds because the record shows that it is contemplated that some of the sites on which armories will be built will be donated by cities. The Act does not attempt to authorize such. The opinion says that it does not pass on the power of the Legislature to authorize such donations, because that question is not before the Court. If it is intended by the opinion to express a doubt on this question, I disagree. I have no doubt. To my mind, Section 52 of Article III of our State Constitution absolutely prohibits such a donation.

Section 46 of Article XVI of our Constitution, in effect, authorizes the Legislature to organize and discipline the Militia of this State "as they shall deem expedient, not incompatible with the Constitution and Laws of the United States." I do not believe that the phrase, "as they shall deem expedient," etc., has effect to authorize the Legislature, in military matters, to override or ignore any other part of our State Constitution. I think Section 46, supra, simply authorizes the Legislature to provide for organizing and disciplining the Militia, nothing more and nothing less. I think that in doing so the Legislature must not transgress any other part of our fundamental law. Of course, it must not transgress the Constitution and Laws of the United States. I attach no significance to the phrase, "as they shall deem expedient." Our government is founded upon the principle that in time of peace the civil authority predominates over the military authority.

Opinions delivered March 29, 1939.