

# THE ATTORNEY GENERAL
## OF TEXAS

December 21, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable H. Tati Santiesteban        Opinion No.   JM-997
Chairman
Natural Resources Committee        Re: Authority of a home rule
Texas State Senate                 city to convey  land to  the
P. O. Box 12068                    state for  use  as  a  park,
Austin, Texas    78711             where the  transfer is  made
                                   at  a  price  below   market
                                   value   (RQ-1572)

Dear Senator Santiesteban:

You ask a question about  the state's acquisition of  a
specific parcel of  land owned by  the city of  El Paso  and
administered by the city's Public Service Board.  This land,
consisting of  approximately 6,833.9  acres, is  within  the
boundaries of the Franklin  Mountains State Park which  were
delineated by the legislature in 1979 and redrawn to exclude
five sections of land  in 1987.  See  Acts 1979, 66th  Leg.,
ch. 736, at  1804; Acts 1987,  70th Leg. ch.  304, at  1676.
The Parks and Wildlife Code  establishes the park under  the
jurisdiction  of  the  Parks  and  Wildlife  Department  and
provides that  the department  "shall acquire  by  purchase,
gift, lease, or condemnation all  of the land described"  in
the 1979 legislation, except for the tracts deleted in 1987.
Parks & Wild. Code §§ 22.221; 22.222(a).  A proposed  agree-
ment between El Paso and the state provides for transferring
the land  to the  state at  a "modest  price" that  is  con-
siderably less than market value.

The Public  Service  Board  of  the  city  of  El  Paso
is appointed  by  the  city   and  has  responsibility   for
administering the water  system for  the city  and the  bond
issues supporting the water  system.  The lands in  question
have been  designated Public  Service Board  lands, and  the
board holds them as agent  for the city.  See V.T.C.S.  art.
1109a; San Antonio Indep. School Dist. v. Water Works Bd. of
Trustees, 120 S.W.2d  861 (Tex. Civ.  App. – Beaumont  1938,
writ ref'd).  Concern  has been expressed  as to the  city's
authority to transfer  these lands  to the state  at a  time
when the Public Service Board of  the city of El Paso  still
has outstanding bonds.

Your question is as follows:

> Does the City of El Paso, through its duly
> elected governing body, have the power and
> authority to make the transfer of land to the
> State for inclusion in the state park system
> at a price which may be less than market
> value?

Your question raises the following three issues: the effect of the outstanding bonds on the city's transfer of these lands; the statutory authority for selling the land at less than market value; and the constitutionality of this transaction under article III, section 52, of the Texas Constitution.

We will first address your concern that provisions of prior bond issues might prevent the city of El Paso from selling this property at less than market value. The Public Finance Section of this office has reviewed the relevant bond documents and has found that the management and control of the city waterworks system (hereinafter the "system") is vested in the Trustees of the Public Service Board by city ordinance of May 22, 1952. Included as subsections D and E of section 12 of this ordinance are covenants on the disposition of the system's property which have been carried forward by all subsequent bond ordinances.

Subsection D is a general covenant by which the board agrees not to take any action whereby the lien of the bonds on the revenues of the system might be lost or impaired. Subsection E specifically addresses the board's authority to dispose of the property of the system. This covenant reads in part as follows:

> E. That the city will not sell, encumber
> or in any manner dispose of the system or any
> substantial part thereof, including any and
> all extensions and additions that may be made
> thereto, until the bonds herein authorized to
> be issued shall have been paid in full as to
> both principal and interest (provided that
> this covenant shall not be construed to
> prevent the disposal by the city of property
> which in the Board's judgment has become
> inexpedient to use in connection with the
> system . . .).

We are informed that the property to be sold does not generate any revenues from which the debt service on the bonds is paid, nor is it used for water or wastewater system

functions. If this information is correct and if the board makes the required determination, these covenants do not prevent the sale of this property. The city's contract with the bondholders protects them from property sales which will impair their source of repayment and permits sales of property not needed for the system. Sale of the land in accordance with these provisions, even if at less than market value, will not impair the bondholder's interests. See generally City of Aransas Pass v. Keeling, 247 S.W. 818 (Tex. 1923).

We next consider whether the city of El Paso has statutory authority to transfer this land to the Parks and Wildlife Department at less than market value.

Sections 22.221 through 22.223 of the Parks and Wildlife Code authorize the Parks and Wildlife Department to acquire the specific acreage you inquire about. Acts 1979, 66th Leg., ch. 736, at 1804. The bill analysis of the 1979 bill which established the Franklin Mountains State Park states as follows:

> Background:
>
> The only state park near El Paso, Hueco Tanks State Historical Park, is located twenty-six miles east of the city and is a limited access, historical preservation park. The city and county parks are small and for 'playground' recreation.
>
> The proposed park in the Franklin Mountains includes the majority of the high mountains in the Franklin Range and some of the remaining wild desert mountains in El Paso County. The area contains many unique features, such as prehistoric and historic archaelogical sites . . . .
>
> The closeness of the proposed area to El Paso would enable residents and visitors to hike mountain trails and study a unique natural environment.
>
> Purpose:
>
> The bill would require the Texas Parks and Wildlife Department to acquire the portion of the Franklin Mountains of El Paso County north of Trans-Mountain Road (Loop 375) to create a state recreational park. The

> department would acquire the land by pur-
> chase, gift, or condemnation with funds from
> the Texas Park Development Fund.

Bill Analysis, Tex. H.B. 867, 66th Leg. (1979).

Thus, the Parks and Wildlife Code provisions were adopted to govern the acquisition of identified land which included the specific land in question. The legislature amended these provisions in 1987 to facilitate the proposed transfer agreement which is the subject of your request. The Bill Analysis to the 1987 legislation stated in part:

Background:

> In 1979 the 66th Legislature created the Franklin Mountains State Park. The park is . . . the largest urban park in the United States. The Public Service Board of El Paso owns land that is within the boundary of the Park (approximately 8,100 acres) which is presently valued at $40,000,000. The State is currently in litigation involving the purchase of this parcel of land from the City of El Paso. The Public Service Board has offered to sell to the State 4,780 acres . . . at a substantially lower price ($250,000) if the 5 sections (3,320 acres) on the eastern border of the park may be exempted as proposed park lands. The property described as Sections 24, 17, 16, 9, and 4 are considered to be prime developable lands and should not be a part of a wilderness park.

Purpose:

> Provides that 5 sections of land within the Franklin Mountains State Park be deleted from the land described for acquisition in Section 2 of the Act.

Bill Analysis Tex. H.B. No. 1839, 70th Leg. (1987).

The legislature thus contemplated that sections 22.221 through 22.223 of the Parks and Wildlife Code would provide comprehensive statutory authority for the department to acquire land designated for Franklin Mountains State Park, including the authority to acquire land from the city of El Paso at less than market value. These provisions constitute a specific law authorizing the sale of the El Paso property

to the department on these terms and they remove this transaction from general statutes that ordinarily govern the sale of land by a city, in particular from chapter 272 of the Local Government Code. See, e.g., Gov't Code §§ 311.003; 311.023; 311.025. See also Flowers v. Pecos River R. Co., 156 S.W.2d 260, 263 (Tex. 1941, writ granted); Townsend v. Terrell, 16 S.W.2d 1063, 1064 (Tex. 1929) (specific statute controls over general statute).

Chapter 272 of the Local Government Code requires political subdivisions to comply with notice and bidding requirements before selling or exchanging land. Local Gov't Code § 272.001. These notice and bidding requirements do not apply to land conveyed to a governmental entity that has the power of eminent domain, but such land may not be conveyed for less than its fair market value. Id. Sections 22.221 through 22.223 of the Parks and Wildlife Code impliedly excepts the transfer of the Franklin Mountains land from the requirements of chapter 272 of the Local Government Code. Thus, the requirement that land be conveyed at not less than market value does not apply to the transfer of the designated land from El Paso to the Parks and Wildlife Department.

We finally consider whether article III, section 52, of the Texas Constitution prohibits the city of El Paso from selling the land to the department at less than market value. Article III, section 52 provides in part:

> (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . .

Tex. Const. art. III, § 52. The proposed sale at less than market value involves an element of donation.

In Texas Nat'l Guard Armory Bd. v. McCraw, 126 S.W.2d 627 (Tex. 1939), the Supreme Court determined that the attorney general was within his right in refusing to approve revenue bonds to finance the construction of armories for the Texas National Guard. The attorney general argued that part of the security for the bonds would be invalid because it would consist of rentals from armory sites donated to the Armory Board by incorporated cities in violation of article III, section 52, of the Texas Constitution. 126 S.W.2d at

630.  The Supreme  Court stated  as follows  in response  to
this argument:

> This Act [the  National Guard Armory  Board
> Act] does not undertake to authorize municipal
> corporations to donate sites for armories; nor
> has the  Legislature  enacted  any  law  which
> undertakes  to  confer  on  such  cities  that
> power.  Since the Legislature  has not by  law
> authorized municipal  corporations  to  donate
> sites for armories, it becomes unnecessary  to
> decide  the  power   of  the  Legislature   to
> authorize  municipal  corporations  to   lend
> their aid to the Board  by donating sites  for
> armories under the provisions of Section 52 of
> Article 3 of the Constitution.

126 S.W.2d at 638.  Thus,  the Supreme Court did not  deter-
mine whether a  city could constitutionally  donate land  to
the National Guard Armory Board.

In Attorney General Opinion  H-108 (1973), this  office
considered a question very similar to the one not reached in
Texas Nat'l Guard Armory Bd. v. McCraw and decided that  the
city of Beaumont could give the Department of Mental  Health
and Mental Retardation ten acres of land in fee simple as  a
site for constructing a ward building at the Beaumont  State
Center for Human Development.

The opinion stated as follows:

> The fact that  the transaction is  denomi-
> nated 'a gift' does not invalidate it  unless
> the Beaumont City  charter contains  restric-
> tive provisions unknown to us.  The  proposed
> use is clearly for a public purpose and  thus
> does not violate Article  3 §§ 50, et.  seq.,
> of the Texas Constitution.  Similar donations
> were involved and approved  by the courts  in
> El Paso County v. City of El Paso, . . . [357
> S.W.2d 783 (Tex. Civ. App. - El Paso 1962, no
> writ)], and City of San Antonio v.  Congrega-
> tion of Sisters  of Charity,  360 S.W.2d  580
> (Tex. Civ. App. -  [Waco] 1962, [writ  ref'd,
> n.r.e.]).

> Actually, the transfer is not a gift.  The
> improvement of  the  property  and  the  con-
> sequent  benefit  to  the  city  of  Beaumont
> supply  consideration  for  the  transaction.
> In the El Paso case, supra, the county  order

> approving the transaction recited as consideration for its transfer that 'it will reduce the fire insurance rate in El Paso.'

Attorney General Opinion H-108 at 4 (1973).

The city of El Paso similarly benefits from transferring its land to the Parks and Wildlife Department because it will be maintained at state expense as part of a state recreational park easily accessible to residents of the city. Consideration for the transfer of land to the state is provided by these benefits to the city, and not merely by the cash sum it receives. See Attorney General Opinion H-1256 (1978).

The judicial opinion in King v. Sheppard, 157 S.W.2d 682 (Tex. Civ. App. - Austin 1941, writ ref'd w.o.m.) addresses a question analogous to the question before us. The legislature appropriated funds to purchase land for the Big Bend National Park which would be deeded to the federal government to use for national park purposes only. A taxpayer challenged the appropriation as violating sections 50, 51, and 52 of article III, which "inhibit the lending or giving of the credit of the State, or the granting of public money . . . to any individual, association, corporation, etc." 157 S.W.2d at 686.

The court quoted at some length from Malone v. Peay, 17 S.W.2d 901 (Tenn. 1929), a Tennessee case dealing with the transfer of state land to the federal government for a national park. The Tennessee court cited authorities to the effect that the United States was not an individual, association, or corporation within state constitutional provisions forbidding the gift or grant of public funds. The court also stated that a transfer of the lands from the state to the United States for park purposes would not impair the beneficial rights of the people of Tennessee, who are also citizens of the United States. The transfer relieved the state from the continuing expense of maintaining the park, while its residents still had the benefits of the park system.

The King v. Sheppard court concluded that the Tennessee decision was sound and should be followed as the law of the case. 157 S.W.2d at 686. Much of the reasoning followed in King v. Sheppard applies to the transfer of the Franklin Mountains property from El Paso to the Parks and Wildlife Department. The benefits of the Franklin Mountains State Park will accrue to El Paso, its residents and visitors. Moreover, authorities from other jurisdictions have held that the state is not an individual, association, company or

corporation within constitutional provisions comparable to article III, sections 50, 51, and 52. See, e.g., City of Sacramento v. Adams, 153 P. 908 (Cal. 1915) (city donated land to state for site for state buildings); Lancey v. King Co., 45 P. 645 (Wash. 1896) (use of county land for public improvements undertaken by state and United States); Ransom v. Rutherford County, 130 S.W. 1057 (Tenn. 1910) (city and county bonds finance purchase of sites and construction of buildings for state teacher's college).

On the basis of the reasoning and authorities cited above, we believe that the city of El Paso may transfer the land in question to the Department of Parks and Wildlife at less than market value without violating article III, section 52 of the Texas Constitution.

Our opinion is limited to the questions discussed. We do not consider any contract provisions, home rule charter provisions, or other provisions not expressly addressed.

### S U M M A R Y

Under sections 22.221 through 22.223 of the Parks and Wildlife Code, the city of El Paso may sell land at less than market value to the Parks and Wildlife Department for inclusion in the Franklin Mountains State Park. The transfer at less than market value does not violate article III, section 52, of the Texas Constitution. Based on the information submitted to us, the fact that the land has been designated land of the El Paso Public Service Board and that the board has outstanding bonds does not bar sale of this land at less than market value.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

p. 5113

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General