

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN 11, TEXAS**

Gerald C. Mann
~~XXXXXXXXXXXXXX~~
ATTORNEY GENERAL

Honorable Arthur B. Knickerbocker
Adjutant General of Texas
Austin, Texas

Dear Sir:

Opinion No. 0-5695
Re: Right of Adjutant General
on behalf of State to
enter into lease rental
contract with the Texas
National Guard Armory
Board.

Reference is made to your letter of October 25, 1943, to which you attached the proposed lease contract to be executed by you, and to your letter of November 5, 1943, supplementing your request. Your letters are as follows:

"You are delivered herewith a proposed contract by and between the Texas National Guard Armory Board as lessor, and the State of Texas as lessee, to be executed by me.

"You will note that Paragraph 7 provides that the lessee (State) promises to pay an installment of $6,200.00 on or before October 31, 1943, and 22 other installments of $3,100.00 each, for 22 consecutive months, aggregating a total of $74,400.00 for the biennum. The 48th Legislature made no provision for the payment of this sum of money, or any other amount by the Adjutant General.

"Will you kindly let me have the answers to the following questions:

"1. Do I have the legal right, as Adjutant General of Texas, to bind the State of Texas, under the law, to pay to the Texas National Guard Armory Board for the time contemplated by the proposed contract the aforesaid sum of money?

"You will note that Item 4, page 234, of the appropriation made by the 48th Legislature for the use and benefit of the Texas National Guard Armory Board for each

year of the next biennium provides for $40,000.00 to
pay rentals on property leased by said Board to the
State of Texas under authority of law.

"2. Would the Texas National Guard Armory
Board have the right to pay the installment of $6,200.00
on or before October 31, 1943, and 22 other installments
of $3,100.00 each, as contemplated by the above referred
to paragraph of the proposed contract, out of the afore-
said appropriation made to the Armory Board, for and in
behalf of the State of Texas, should I execute the proposed
agreement as Adjutant General for the State of Texas.

"3. In the event this proposed contract was made,
or any contract entered into by and between the parties
proposed, would the lessee have the right to take the
proceeds of the lease and apply the same to the payment
of an indebtedness of any character, or would it be necessary
for the aforesaid Texas National Guard Armory Board and the
State, by the Adjutant General, to pay the proceeds of such
rental contract into the Treasury of the State of Texas, as
is generally provided by law."

Your supplemental inquiry of November 5 is as follows:

"Does the Adjutant General have any discretion as to
whether he will or will not sign a contract with the Armory
Board

(a) As a matter of fact?
(b) As a matter of law?

"Will you kindly incorporate your reply to the above
inquiries in your answer to questions submitted on the afore-
said date?"

In connection with the three questions in your origin-
al letter which we will consider first in this opinion, the
provisions of Article 5890b, Vernon's Annotated Civil Statutes
must be looked to in determining the authority of the Texas
National Guard Armory Board to sub-lease the property in
question to the State and your authority to execute such lease
as agent of the State. The provisions of this Article
applicable to your questions are as follows:

"Section 2. The Board hereby created shall be and it
is hereby constituted a body politic and corporate. It

shall succeed to the ownership of all property of, and all lease and rental contracts entered into by, the Texas National Guard Armory Board that was created by prior statues and all the obligations contracted or assumed by the last mentioned Board with respect to any such property and contracts shall be the obligations of the Board created by this Act. With this exception, no obligation of said former Board shall be binding upon the Board hereby created. It shall be the duty of said Board to have charge of the acquisition, construction, rental, control, maintenance and operation of all Texas National Guard Armories, including stables, garages, rifle ranges, hangers and all other property and equipment necessary or useful in connection therewith, and the said Board shall possess all powers necessary and convenient for the accomplishment of such duty, including, but without being limited thereto, the following express powers: . . .

"(f) To acquire, by gift or by purchase, for use as building sites or for any other purposes deemed by said Board to be necessary or desirable in connection with or for use of units of the Texas National Guard, property of any and every description, whether real, personal or mixed, including, but without limitation on the foregoing, leasehold estates in real property, and hold, maintain, sub-lease, convey and exchange such property, in whole or in part, and/or to pledge the rents, issues and profits thereof in whole or in part; also, to acquire, by gift or purchase or by construction of the same, furniture and equipment suitable for Armory purposes and to hold, maintain, sub-lease, convey, and exchange such furniture and equipment, in whole or in part.

"(g) To construct buildings on any of its real property, whether held in fee simple or otherwise, and to furnish and equip the same and to hold, manage and maintain all of said property and to lease to the State of Texas. . .

"(h) From time to time, ɔ borrow money, and to issue and sell bonds, debentures and other evidences of indebtedness for the purpose of acquiring one or more building sites and buildings, . . .and to be secured as follows: By a pledge of, and payable solely from, the rents, issues and profits of all of the property of the Board; or by a pledge of, and payable solely from the rents, issues and profits, of the property acquired or constructed by the Board, . . .

"(i) To execute and deliver leases, or sub-leases in the case of buildings located upon leasehold statutes acquired by the Board, demising and leasing to the State of Texas through

the Adjutant General, who shall execute the same for said State, for such lawful term as may be determined by the Board, any building or buildings and the equipment therein and the site or sites therefor, to be used for Armory and other purposes and to renew such leases or sub-leases from time to time; provided, however, that if at any time the State of Texas shall fail or refuse to pay the rental reserved in any such lease or sub-lease, or shall fail or refuse to lease or sub-lease, any such building and site, or to renew any existing lease or sub-lease thereon at the rental provided to be paid, then the Board shall have the power to lease or sublease such building and equipment and the site therefor to any person or entity and upon such terms as the Board may determine. . . The annual rental (which may be made payable in such installments as the Board shall determine) to be charged the State of Texas for the use of such property leased or sub-leased to it by the Board shall be sufficient to provide for the operation and maintenance of the property so leased or sub-leased, to pay the interest on the bonds, debentures or other evidences of indebtedness, if any, issued for the purpose of acquiring, constructing or equiping such property to provide for the retirement of such bonds, debentures or the other evidences of indebtedness, if any, and the payment of the expenses incident to the issuance thereof, as well as the necessary and proper expenses of the Board not otherwise provided for."

The Act as amended by the 45th Legislature in 1937, was brought before the Supreme Court in the case of Texas National Guard Armory Board vs. McCraw, 126 S. W. (2nd) 627, for the purpose of determining its constitutionality. The Armory Board, by original mandamus proceedings, sought to compel the Attorney General to approve the record concerning the bonds executed by the Board. In this case the Attorney General in questioning the validity of the Act raised, among others, the following objections.

"First. The following sub-paragraphs of section 2 of said Act (Vernon's Annotated Civil Statutes, Article 5890b, Section 2), are void for unconstitutionality in that (i) authorizes the creation of a debt on behalf of the State in violation of Section 49, Article III of the Constitution of Texas (Vernon's Annotated Civil Statutes) and (g), (h), and (i) taken together constitute the giving or lending and a pledge of the credit of the State in violation of Section 50 of said Article; and (i) in so far as it authorizes the Board to fix and determine the rentals to be paid by the State is a delegation of legislative authority in violation of Section 1 of Article 2 and of Section 1 of Article 3 of said Constitution.

"  . . .

"Third,  That the Board is without authority to acquire or hold sites for armory buildings or to pledge the revenues from buildings erected thereon if the title in said Board is by way of a long term leave and not in  fee simple absolute.

"Fourth.  That, whether or not the third proposition be true, the Board is without authority to lease to the State of Texas any buildings it may erect on the sites held by the Board on long term lease since to do so would be a subleasing not contemplated or authorized in said Act.

"Fifth.  That the leases of the Board to the State of Texas, which the said Act contemplates to be made, can not be validly executed by or in behalf of the State of Texas from which it follows that any pledge such as is contained in the said indenture, of the rents to be derived from leases to the State would be void and without effect."

Mr. Justice Sharp wrote the majority opinion upholding the validity of this Act and answered all questions raised by the Attorney General.  The holding of the Court is found in the  following two paragraphs:

"This Act places the burden on the Board to do whatever is necessary to carry out its objects and purposes, and such contracts or leases are to be made 'through the Adjutant General for such lawful terms as may be determined by the Board.' The Board is authorized to acquire sites for armory purposes, by gift or purchase, and to pledge the rents or profits thereof, and to execute bonds, debentures and other evidence of indebtedness therefor, payable solely from the rents, issues and profits thereof; and it is expressly agreed that said bonds or other evidences of indebtedness shall not constitute nor be deemed a debt of the State of Texas, nor is the credit of the State of Texas pledged for the payment thereof.

"  . . .

"In our opinion, this Act does not violate any of the provisions of the Constitution, and we find adequate grounds on which to base its validity."

In connection with your request, that part of the appropriation act of the 48th Legislature to the Texas

National Guard Armory Board, relating to the questions here, is set out below:

"TEXAS NATIONAL GUARD ARMORY BOARD,

                              Beginning     Ending
                              Sept. 1, 1943 Aug. 31, 1945

Maintenance and Miscellaneous:

4.  Armory rentals, including
    headquarters, offices and
    motor vehicle storage; avail-
    able either to pay rental
    contracted to be paid by the
    Armory Board, or to pay rentals
    on property leased by said board to
    the State of Texas under authority
    of law - - - - - - - - - - $40,000.00  $40,000.00"

We consider this appropriation to be applicable to lease contracts such as is presented here. A total of forty thousand ($40,000.00) dollars for each year of the beinnium is made available as is stated in the Act:

". . .or to pay rentals on property leased by said board to the State of Texas under authority of law."

In accordance with the provisions of Article 5890b, it is the opinion of this department that the first two of your questions should be answered in the affirmative.

In response to your third question, we find that the Act provides that the rents and profits derived from such leases may be pledged to secure indebtedness incurred by the board, and that they may be used to pay necessary expenses not otherwise provided for. Therefore, it is our opinion that the Armory Board is to receive the money derived from such rental contracts.

Having answered the questions in your letter of October 25, 1943, in the affirmative, we will attempt to answer the questions in your letter of November 5, 1943, which are as follows:

"Does the Adjutant General have any discretion as to whether he will or will not sign a contract with the Armory Board

(a) As a matter of Fact?
(b) As a matter of Law?

In the consideration of this question, we look to the history of the Act creating the Texas National Guard Armory Board.

During the early days of the present National Administration, the Congress of the Unites States, while considering the Federal Emergency Relief Appropriation, was requested by the War Department to "ear mark" a portion of their funds to be used for the construction of National Guard Armories in the several States upon the advice and approval of the War Department. The Texas allotment was tentatively set at six million dollars. The Congress acted favorably on this request. The funds were to be used under the direction of the Public Works Administration, whose regulations required State sponsorship of Armory Projects, and grants to the several States were contingent on a substantial contribution of them.

Following this, the 44th Texas Legislature, Acts of 1935, created the Texas National Guard Armory Board, making it the duty of the Board to have charge of the construction, rental, control, maintenance and operation of all National Guard Armories in Texas. The emergency clause of this Act, after stating the availability of these Federal funds, said:

". . .and the further fact that the State of Texas is now paying annually one hundred thousand ($100,000.00) dollars or more for armory rentals; and the further fact that there is at this time no specific board created by the laws of Texas authorized to cooperate with the Federal Government for the purpose of securing said allotment."

This Act was amended by the 45th Legislature, 1937, Chapter 366, Page 740, and was codified in Vernon's Annotated Civil Statutes as Article 5890b.

The Act as amended has been quoted from freely in this opinion. However, it should be noted that in Section 2 of the Amendment the word "acquisition" was added. In addition to the duty of having charge of the construction, control, etc. of all armories, it was to have charge of the acquisition of all Texas National Guard Armories.

In addition, as quoted from heretofore, it was authorized to borrow money, issue bonds and other forms of

indebtedness, pledging the rents and profits as security, lease to the State, and other powers not necessary to mention here.

The Act was again amended in 1939, but the changes are not important in this discussion.

It was the Act as amended in 1937 that was before the Supreme Court. This question presented here was not specifically decided by the court in the opinion it rendered. However, we have carefully examined the file of this case in the Attorney General's office and when considering it and the opinion of the court together, we find the question was indirectly presented and inferentially included in the opinion.

The Texas National Guard Armory Board in its brief and argument to the Supreme Court said in connection with this power of the Board to lease the armories to the State:

"What is presented here is a statute which attempts to authorize the creation of an obligation on the part of the State and it must be determined whether or not such an obligation is a debt prohibited by the Constitution.

"That the expense of renting armories is a current expense of the State is indicated by the fact that the Constitution, Art. XVI, Sec. 46, makes it the duty of the Legislature to 'provide by law for organizing and disciplining the Militia of the State in such manner as they shall deem expedient.'"

In response to this proposition and argument, the court said:

"Finally, we held that the bonds provided for by the Act under consideration would create no debt against the State of Texas; nor is the credit of the State pledged for the payment of such bonds, or interest thereon, or any part thereof. Such bonds would be payable solely from the rents, issues and profits to be derived from the operation or leasing of the Armory buildings; unless the Legislature in the exercise of its power and discretion, should see fit, when making its biennium appropriation, to include therein a sufficient sum of money to pay such bonds, or any part thereof.

"The act is also assailed on the ground that the Legislature has exceeded its Constitutional authority by

the undertaking to delegate to the Board the power to fix the rentals to be paid by the State, and that such effort on the part of the Legilature to delegate such power is in violation of Section 1 of Article 2 and Section 1, of Article 3, of the Constitution.

"The general rule prevails that, unless there is express authority given in the Constitution, the power of general legislation may not be delegated by the Legislature. See 9 Tex. Jur., Sec. 68, p. 493. However there are many powers that the Legislature may delegate to other bodies, in many instances, where the Legislature cannot itself practically or efficiently perform the functions required, there can be no doubt of its authority to designate some tribunal to perform the duties required to carry out the purposes of such legislature. In this State the Legislature has created the Railroad Commission, the Live Stock Commission, the Highway Commission, and many other agencies; and the trend of modern decisions is to uphold such laws."

It seems that the court has, at least by implication, held that the statute imposed a duty on the Adjutant General to execute such lease contracts, an agent of the State, as are presented to him by the Board under the provisions of the Statute.

In 1935, the Supreme Court in the case of Fort Worth Cavalry Club v. Sheppard, 83 S. W. (2nd) 660, in discussing the power of the Adjutant General to execute leases for National Guard Armories held that under the laws of this State the Adjutant General had no express right to execute lease contracts, such right was only by implication, and that right was found in the wording of the Appropriation Act making funds available to his department for his purpose. Thereafter in 1939, the 46th Legislature amended Article 5790, V.A. C.S., giving the Adjutant General the express right to execute lease contracts for armories, but this power was limited as follows:

". . . .and the Adjutant General shall not lease or sublease any property for armory purposes in or about any municipality from any person other than the Texas National Guard Armory Board, so long as adequate facilities for such armory purposes in or about such municipality are available for renting from the Texas National Guard Armory Board."

This amendment to Article 5790, when considered with

Article 5890b seems conflicting. However, the evident purpose was to strengthen Article 5890b by giving the Adjutant General the express right to execute leases with the Armory Board, since the Supreme Court had held in the Fort Worth Cavalry Club v. Sheppard, supra, that he had no express power under the statutes to do this. We take this position since under the provision of Article 5890b, the Texas National Guard Armory Board is expressly created for the purpose of acquiring, constructing , rending, controlling and maintaining all National Guard Armories in the State of Texas.

Further, the provisions in Article 5890b, Section 2, Sub-section (i), wherein it is provided,

". . .that if at any time the State of Texas shall fail or refuse to pay the rental reserved in such lease or sublease, or shall fail or refuse to lease or sublease any such building and site, or to renew any existing lease or sublease thereon at the rental provided to be paid. . ."

is applicable only to the Legislature of this State, and does not vest any discretionary rights in the Adjutant General.

Finally, we conclude that the Legislature intended that the Armory Board be vested with power to do all that is necessary to provide the State with National Guard Armories. To further this purpose, the Board was authorized to borrow money, to pledge the rents and profits to secure such indebtedness, such profits to be derived by renting Armories to the State within the limitation of current appropriations made to said Board, and the Adjutant General was designated to act as the out the purposes intended. Further that the Adjutant General in executing these lease contracts was to perform a mere ministerial act, and was not vested with any discretion in the matter.

JWR:mb

APPROVED DEC 2, 1943

Gerald C. Mann
Attorney General of Texas

This Opinion Considered
in Limited Conference and
Approved.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

    Jack W. Rowland
    Assistant