327 A.2d 1

COMMONWEALTH of Pennsylvania ex rel. Lieutenant
Angelo J. CARCACI, Appellant,

v.

William BRANDAMORE, Sergeant-at-Arms of the House of
Representatives, Harrisburg, Dauphin
County, Pennsylvania.

Supreme Court of Pennsylvania.

Argued April 25, 1974.

Decided Oct. 28, 1974.

Morris Gerber and Marc D. Jonas, Norristown, William J. Peters, Harrisburg, for appellant.

Edward Friedman, Matthew F. Coppolino, Chief Counsel, House of Representatives, Commonwealth of Pa., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

This is an appeal from a final order dismissing a petition for a writ of habeas corpus.[1] The relator, a witness in an investigation conducted by a committee of the House of Representatives of the Commonwealth of Pennsylvania, refused to answer certain questions put to him at the bar of the House. By resolution, the House of Representatives found him in contempt, and directed that he be committed until the expiration of the current session of the General Assembly unless he should sooner purge himself by testifying before the committee. The relator contends that his interrogation and the subsequent contempt proceedings violated his constitutional right to due process of law. We find no merit in these contentions, and accordingly affirm the order dismissing the petition for the writ.

On February 6, 1973, the House of Representatives adopted House Resolution No. 21, which established a

---

1. The petition for the writ was filed in the Court of Common Pleas of Dauphin County. A hearing was held, following which the petition was dismissed. The relator appealed to the Superior Court, which, being uncertain of its jurisdiction over the appeal and believing that the case involved important public issues requiring prompt disposition, certified the appeal to this Court. No objection has been raised to our assumption of jurisdiction at this stage in the proceedings, and we do so without expressing an opinion as to whether the Superior Court had jurisdiction to consider the appeal. *See* the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. V, § 503(a), 17 P.S. § 211.-503(a).

"special committee" of five members of the House to investigate "any and all matters pertaining to . . . law enforcement or the administration of justice; for the purpose of informing the House of Representatives in the discharge of its constitutional and legislative functions." [2] The relator, Lieutenant Angelo Carcaci of

**2.** House Resolution No. 21 provides in its entirety as follows:

"RESOLVED, That a special committee composed of five members, two of whom shall be members of the minority party, be appointed by the Speaker of the House of Representatives, and such committee is authorized and directed to examine, investigate and make a complete study of any and all matters pertaining to: (1) the administration, activities, methods of operation, use of appropriations, use of funds and expenditures thereof, policies, accomplishments and results, deficiencies or failures, efficiency and effectiveness of law enforcement within the Commonwealth and, (2) the work and functioning of law enforcement agencies, departments, commissions, boards, committees, groups, organizations and entities within the Commonwealth and, (3) individuals, corporations, consultants, groups, agencies, departments, boards or entities within the Commonwealth related to, involved in, or affecting law enforcement or the administration of justice; for the purpose of informing the House of Representatives in the discharge of its constitutional and legislative functions; therefore be it

"RESOLVED, That the committee shall select a chairman from among its members. Vacancies in the membership of the committee shall not affect the power of the remaining members to execute the functions of the committee, and shall be filled in the same manner as the original selection. A majority of the members of the committee, or any subcommittee thereof, shall constitute a quorum for the transaction of business, except that a lesser number, to be fixed by the committee, shall constitute a quorum for the purpose of taking sworn testimony; and be it further

"RESOLVED, That the committee may meet, hold hearings, take testimony and make its investigations whether the General Assembly is in session or in adjournment. It may issue subpoenas under the hand and seal of its chairman commanding any person to appear before it and to answer questions touching matters properly being inquired into by the committee and to produce such books, papers, records and documents as the committee deems necessary. Any person who wilfully neglects or refuses to testify before this committee or to produce any books, papers, records, or documents shall be subject to the penalties provided by the laws of the Commonwealth in such cases. Each member of the committee shall have power to administer oaths and affirmations to witnesses appearing before the committee; and be it further

"RESOLVED, That the committee shall have authority to employ and to fix the compensation of such officers, experts, and

the Pennsylvania State Police, was summoned to testify before the committee concerning his activities as a member of the State Police. On the advise of counsel, Carcaci refused to answer certain questions propounded to him by the committee.[3] The committee referred the matter to the House of Representatives, which, on December 12, 1973, unanimously adopted House Resolution No. 152, directing Carcaci to appear before the bar of the House. This resolution made specific reference to the subject matter of the questions put to Carcaci by the committee, his refusal to answer those questions, and the penalty which his continued refusal might entail. On January 29, 1974, Carcaci appeared before the bar of the House, and again refused to answer any questions of the committee. On the same day the House adopted a resolution finding Carcaci in contempt of the House of Representatives and authorizing the issuance of a warrant for his commitment to the respondent, the Sergeant-at-Arms of

employes as it deems necessary in the performance of its duties and to make such necessary and proper expenditures as it deems advisable. The expenses of the committee shall be paid upon vouchers approved by the chairman. The committee is authorized to utilize the services, information, facilities, and personnel of the various departments and agencies of the Commonwealth to the extent that such services, information, facilities, and personnel, in the opinion of the committee, can be furnished without undue interference with the performance of the work and duties of such departments and agencies; and be it further

"RESOLVED, That the committee shall report its findings together with its recommendations, for remedial legislation or other appropriate action at the earliest practicable date."

3. It appears that the questions which Carcaci refused to answer dealt with his alleged wiretapping activities on behalf of the State Police. Carcaci did not invoke his Fifth Amendment privilege against self-incrimination in support of his refusal to testify. His counsel conceded in oral argument before the court below that the statute of limitations had run on any offense arising out of the facts which were sought by the committee. Nor, so far as appears from the record, did Carcaci object at any point that the questions propounded to him were not pertinent to the subject matter of the committee's investigation. See *Yellin v. United States*, 374 U.S. 109, 122, n. 8, 83 S.Ct. 1828, 1836, 10 L.Ed.2d 778, 788 (1963).

the House. Shortly thereafter, Carcaci commenced these proceedings by filing his petition for the writ.

The relator's first contention is directed to the constitutionality of House Resolution No. 21. A few preliminary observations will help to place this contention in proper perspective.

■■ The power to investigate is an essential corollary of the power to legislate. The scope of this power of inquiry extends to every proper subject of legislative action. *McGinley v. Scott*, 401 Pa. 310, 164 A.2d 424 (1960); *Barenblatt v. United States*, 360 U.S. 109, 111–112, 79 S.Ct. 1081, 1085, 3 L.Ed.2d 1115, 1120–1121 (1959); *McGrain v. Dougherty*, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927). Broad as it is, however, the legislature's investigative role, like any other governmental activity, is subject to the limitations placed by the Constitution on governmental encroachments on individual freedom and privacy. *Barenblatt v. United States, supra*, 360 U.S. at 112, 79 S.Ct. at 1085, 3 L.Ed.2d at 1121; *Watkins v. United States*, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957). We approach this case with a full awareness of the threat that wide-ranging legislative investigations may pose to these protected interests. As we recently remarked in a different but related context, "our focus must always be directed toward obtaining a balance between the protection of the rights of the individual and the avoiding of unnecessary restraint upon the State in the performance of its legitimate governmental purposes. Such a balance would be frustrated if we unreasonably emphasize or deprecate either interest." *Pennsylvania Crime Commission Subpoena*, 453 Pa. 513, 522, 309 A.2d 401, 407 (1973); *see Barenblatt v. United States, supra*, 360 U.S. at 126–127, 79 S.Ct. at 1092–1093, 3 L.Ed.2d at 1129. In striking this delicate balance in the context of a legislative inquiry, the charter of the investigating committee is only

one of several points of reference for a determination which must inevitably hinge on the facts of each case.

Carcaci's attack on the constitutionality of House Resolution No. 21 is couched in general due process terms. He contends that the resolution is so "broad, vague, and indefinite" as to be unconstitutional; however, his perfunctory effort to relate this sweeping charge to a threat to his constitutional rights of free speech, association, and privacy is not persuasive. Law enforcement and the administration of justice are public functions. Moreover, broad as this area of inquiry may be, its limits are relatively easy to define. A legislative investigation into this area seems far less threatening to freedoms protected by the Bill of Rights than other inquiries which have received a judicial stamp of approval. *Compare Barenblatt v. United States, supra.*

■■ It can hardly be doubted that law enforcement and the administration of justice are proper subjects for legislative action. Being satisfied on this point, we are not disposed to quibble over the specific language of the resolution. The committee created by the resolution does not adjudicate or punish. Its function is to find facts and make recommendations to the legislature for remedial legislation and other appropriate action. It does not deprive anyone of life, liberty or property. Its legislative charter is not subject to the same strict due process standards by which we would measure a penal statute. *Cf. Hannah v. Larche,* 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). The relator's objections that, under the terms of the resolution, the committee's investigation might extend into areas of exclusive federal concern or overlap with the work of other committees and commissions are addressed to the wrong forum. Whatever the merits of these observations, they have no bearing on Carcaci's rights as a witness before the committee. A proper respect for the limits of the judicial function and

the doctrine of separation of powers dictates that we leave matters to the legislature.

■ Carcaci also attacks the procedure by which he was found in contempt of the House of Representatives. He contends that, in order to comply with the requirements of due process of law, any such finding of contempt must be made in a judicial forum. This contention is without merit. The power of the Houses of the General Assembly to vindicate their authority and processes by punishing acts of contempt committed in their presence is inherent in the legislative function. The decisions of the United States Supreme Court leave no doubt that the Federal Constitution imposes no general barriers to the exercise of this power. *Groppi v. Leslie,* 404 U.S. 496, 499–500, 92 S.Ct. 582, 584–585, 30 L.Ed.2d 632, 636 (1972); *Jurney v. MacCracken,* 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802 (1935); *Anderson v. Dunn,* 6 Wheat. 204, 5 L.Ed. 242 (1821). Since 1790, the constitutions of this Commonwealth have provided that each House should have "all . . . powers necessary for a branch cf the legislature of a free State." *See* Constitution of 1790, art. 1, § 13; Constitution of 1838, art. 1, § 13. In article 2, section 11 of the Constitution of 1874, P.S., this general grant of power was supplemented by a provision that "[e]ach House shall have power to . . . . punish its members or other persons for contempt or disorderly behavior in its presence." This provision was left intact by the constitutional convention of 1967, and remains in force today. As long ago as 1842 the General Assembly provided that each branch of the legislature should have the subpoena power and the power to commit to prison "any witness brought to the bar of either house [who] shall refuse . . . to render an answer to all legal questions duly propounded." Act of June 13, 1842, P.L. 491, § 1, 46 P.S. § 61. This Act is still in effect and, so far as our research shows, has never been challenged until this case. The House of Repre-

sentatives followed the procedure of this statute in the instant case, and was entirely correct in so doing.[4]

Of course, the manner in which a legislative body exercises its inherent power to vindicate its authority and processes must satisfy the requirements of procedural due process. "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 872–873 (1950), quoted in *Groppi v. Leslie, supra*, 404 U.S. at 502–503, 92 S.Ct. 582, 586, 30 L.Ed.2d at 638. Carcaci contends that the proceedings before the bar of the House did not satisfy these requirements. We cannot agree. There is no basis in the record for a claim of inadequate notice. On three separate occasions, Carcaci refused to answer questions propounded to him by the committee. He was expressly warned that his continued refusal to testify could result in a citation for contempt. House Resolution No. 152, summoning Carcaci to appear at the bar of the House, recited in detail the facts and circumstances leading up to its adoption. The relator was given full opportunity to justify his failure to testify. His counsel appeared with him at the bar of the House, and filed an extensive brief on his behalf. Carcaci might have avoided any penalty by answering the questions put to him before the assembled representatives, but he refused to do so. It was this contumacy, rather than his earlier conduct at

---

**4.** Had Carcaci wished to challenge the constitutionality of the committee's investigation without risking a contempt citation before the bar of the House, judicial recourse would have been available to him. Injunctive relief from the activities of the committee could have been sought in a court of equity. *See McGinley v. Scott*, 401 Pa. 310, 164 A.2d 424 (1960); *Annenberg v. Roberts*, 333 Pa. 203, 2 A.2d 612 (1938).

the committee hearings, for which the House forthwith invoked the sanction authorized by the Act of 1842, *supra.*[5] In sum, we conclude that the House of Representatives showed a scrupulous regard for the rights of the witness, who was afforded ample "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Trust Co., supra.*

Order affirmed.

MANDERINO, J., concurs in the result.

ROBERTS, J., concurs in the result.

---

**5.** No claim is made that relator had a right to trial by jury prior to undergoing imprisonment for a period potentially in excess of six months. *Cf. Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974).